# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1576 | **DATE** | 10/19/2001 |
| **CASE TITLE** | Mold-Masters Limited vs. Husky Injection Molding Systems, Lt | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. For the reasons stated, this Court finds that Mold-Masters has properly asserted the attorney-client privilege with respect to communications to and from McKenzie.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 22 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 114 |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 10/19/2001 date mailed notice | |
| IS | courtroom deputy's initials | OCT 19 PM 3:34 Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MOLD-MASTERS LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 1576 |
| | ) | |
| v. | ) | Judge Suzanne B. Conlon |
| | ) | |
| HUSKY INJECTION MOLDING | ) | Magistrate Judge |
| SYSTEMS, LTD., | ) | Martin C. Ashman |
| | ) | |
| Defendant. | ) | |

DOCKETED
OCT 22 2001

## MEMORANDUM OPINION AND ORDER

Mold-Masters Limited filed suit against Husky Injection Molding Systems, Ltd. for patent infringement. Presently before this Court is Husky's Motion to Compel Documents and Things Relating to Dale McKenzie, a patent agent. Mold-Masters opposes the discovery on the ground of attorney-client privilege. For the following reasons, this Court finds that Mold-Masters has properly asserted the attorney-client privilege.

### I. Background

In June 2001, Husky served Mold-Masters with ninety-five requests for various types of documents concerning the patent at issue, patent number 5,299,928 (the "928 patent"). Mold-Masters responded in a timely manner, asserting an objection to all ninety-five requests, of which many were on the ground of attorney-client privilege. Mold-Masters filed a privilege log shortly after providing its response.

The privilege log identified the withheld documents and revealed that many of the withheld documents were authored by or sent to McKenzie. Mold-Masters retained McKenzie to

prosecute the 928 patent application before the United States Patent and Trademark Office. During the relevant time period, McKenzie was not licensed to practice general law by any bar in the United States, but he was registered to practice patent law before the United States Patent and Trademark Office. In light of McKenzie's professional status, the instant discovery dispute arose.

Husky contends that Mold-Masters cannot assert the attorney-client privilege as to any documents authored by or sent to McKenzie if McKenzie was not acting under the direct supervision of a lawyer because communications between clients and their patent agents fall outside the scope of the attorney-client privilege. Mold-Masters rejects this proposition, arguing that the attorney-client privilege applies to patent agents acting in their capacity as such in proceedings before the United States Patent and Trademark Office. As strange as this may seem, each party claims to support its respective position with the "weight of authority." (Def.'s Supplemental Mem. at 2; Pl.'s Supplemental Mem. at 4.)

## II. Discussion

The attorney-client privilege is well recognized and long standing. Dating back to the 1600s, it represents the most ancient of the privileges for confidential communications. It developed in England as a consideration for the fostering of confidence and trust by the client in his legal advisor so that the legal advisor could provide effective legal advice. *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D. Ill. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); 8 Wigmore, Evidence § 2290, at 542-43 (McNaughton rev. 1961). The theory was that, by suppressing the client's apprehensiveness about disclosing sensitive facts, and thereby

encouraging disclosure, the legal advisor would more likely be able to obtain information essential to the effective performance of his duties. The theory guided the initial development of the attorney-client privilege in the American courts, and it continues to guide the development of the attorney-client privilege in the American courts today. Paul R. Rice, Attorney-Client Privilege in the United States § 1:12, at 38-41 (2d ed. 1999).

The general principle of the attorney-client privilege adopted by the Seventh Circuit takes the following form: "Where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor, except the protection be waived." *Unites States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting Wigmore, *supra*, § 2292, at 554). As the attorney-client privilege is in derogation of the judicial search for truth, it must be narrowly construed. *Trammel*, 445 U.S. at 50 (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)); *United States v. Nixon*, 418 U.S. 683, 710 (1974). Procedurally, the burden of establishing the attorney-client privilege falls on the party asserting the privilege. *Prevue Pet Prods., Inc.*, 200 F.R.D. at 415.

As framed by the parties, the sole issue for this Court to decide is whether a patent agent is a professional legal advisor, as that term is used in Wigmore's general principle. Before resolving the issue, we first define a patent agent. Next, we explore the use of the term professional legal advisor.

A.  **Patent Agents**

A patent agent is an individual who is registered to practice patent law before the United States Patent and Trademark Office, the oldest federal agency in the United States. *Sperry v. Florida*, 373 U.S. 379, 382-83 (1963) (finding that the preparation and prosecution of patent applications by a patent agent before the United States Patent and Trademark Office constitutes the practice of law); 37 C.F.R. § 10.6(b) (2001). To be registered, the patent agent must demonstrate that he is of good moral character and repute, that he possesses the legal, scientific, and technical qualifications necessary to enable him to render valuable service to patent applicants, and that he is otherwise competent to advise and assist patent applicants in the presentation and prosecution of their patent applications before the United States Patent and Trademark Office. 37 C.F.R. § 10.7(a). Generally, presentation and prosecution of patent applications before the United States Patent and Trademark Office entails drafting claims, responding to objections to claims, and possibly conducting an appellate hearing before a panel of administrative law judges. *Sperry*, 373 U.S. at 383. To be registered, the patent agent must also pass an examination and take an oath of office. 37 C.F.R. §§ 10.7(b), .8.

The United States Patent and Trademark Office determined that patent agents need not be licensed to practice general law by any bar in order to practice patent law before the United States Patent and Trademark Office.[1] *Id.* § 10.6(b). Although lawyers may practice patent law before the United States Patent and Trademark Office, they too must meet the same registration requirements as nonlawyer patent agents, which are listed above. *Id.* § 10.6(a). For all purposes,

---

[1] The United States Patent and Trademark Office, not the courts, determines who is qualified to practice patent law before it. 35 U.S.C. § 31.

lawyers and nonlawyers seeking to practice patent law before the United States Patent and Trademark Office find themselves standing on the same footing. *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 377, 393 (D.C. 1978).

### B. Professional Legal Advisors

From its inception, the attorney-client privilege applied to all professional legal advisors. Professional legal advisors in England were barristers, attorneys, and solicitors, all of which were lawyers. Rice, *supra*, § 1:4, at 14-16. As lawyers, these legal advisors comprised the body of legal advisors deemed qualified by the courts through bar membership to practice law before the courts. There was no reason to encourage the relationship of client and legal advisor where the legal advisor was unqualified to practice law, so the courts applied the attorney-client privilege only to communications with members of the bar. Wigmore, *supra*, § 2300, at 580. Unqualified legal advisors could not provide effective legal advice, regardless of the information they acquired.

Throughout American history, federal courts have also used bar membership to determine whether a legal advisor was a professional legal advisor and therefore capable of asserting the attorney-client privilege. *See Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D. Tex. 1995) ("The attorney-client privilege relates to communications made to a member of the bar or [his] subordinate, in confidence, for the purpose of securing legal advice, assistance, or representation."); *Dabney v. Inv. Corp. of Am.*, 82 F.R.D. 464, 465 (E.D. Pa. 1979) ("It has long been held that the privilege applies only to members of the bar of a court or their subordinates."); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1169 (1974) ("[T]he person, to

whom a communication is made and is claimed to be within the attorney-client privilege, must be a member of the bar of a court."); *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 358 (D. Mass. 1950) ("The privilege applies only if . . . the person to whom the communication was made is a member of the bar of a court, or his subordinate . . . ."). This is especially true in patent cases. *See Gorman v. Polar Electro, Inc.*, 137 F. Supp. 2d 223, 225-27 (E.D.N.Y. 2001) ("[C]ourts in this Circuit generally have held that the attorney-client privilege applies to 'confidential communications with patent agents acting under the authority and control of counsel . . . .'" (quoting *Saxholm AS v. Dynal, Inc.*, 164 F.R.D. 331, 337 (E.D.N.Y. 1996))); *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 1310668, at *2 (N.D. Ill. Sept. 13, 2000) ("Ordinarily, communications between a client and a patent agent are not subject to the attorney-client privilege."); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 256 (N.D. Ill. 2000) ("[N]o communication from [a] patent agent[] . . . [is] subject to the attorney-client privilege . . . ." (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 143 F.R.D. 611, 616 (E.D.N.C. 1992))); *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 546 (E.D.N.C. 1993) ("Generally, communications with patent agents . . . are not subject to privilege . . . ."); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 5 (N.D. Ill. 1980) ("Notwithstanding the quasi-legal service patent agents render, courts have declined to extend the privilege to the patent agent."); *Rayette-Faberge, Inc. v. John Oster Mfg.*, 47 F.R.D. 524, 526 (E.D. Wis. 1969) ("In my opinion, the attorney-client privilege does not apply to the correspondence in question for the reason that the communications are with a group of agents who . . . are not attorneys at law."). The basis for

the distinction, according to the few courts that have provided one,[2] echoes the basis provided in the preceding paragraph: courts should only encourage the public to seek legal advice from those who are competent to practice law, admission to a bar guarantees the requisite minimal level of legal competence. *Dabney*, 82 F.R.D. at 466; Rice, *supra*, § 3:2, at 8-9; Wigmore, *supra* § 2300a, at 581-82.

### C. Patent Agents as Professional Legal Advisors

A review of 37 C.F.R. pt. 10, coupled with the Supreme Court's decision in *Sperry v. Florida*, evinces that patent agents are professional legal advisors with respect to proceedings before the United States Patent and Trademark Office. Therefore, any communications that take place between clients and their patent agents, acting in their capacity as such, must be protected by the attorney-client privilege. Patent agents are professional legal advisors by virtue of the fact that they must demonstrate character and fitness to practice patent law, possess specific skills relevant to the practice of patent law, take an oath of office, pass an examination, conduct themselves in conformance with an ethical code (basically a copy of the ABA's Model Code of Professional Responsibility), and submit to discipline for engaging in misconduct before the United States Patent and Trademark Office. 37 C.F.R. pt. 10. In view of this, there is no logical reason to discourage the public from seeking legal advice from patent agents—they are just as much professional legal advisors as lawyers within the narrow realm of patent proceedings

---

[2] More often than not, courts assert the rule without discussing the basis for the rule. For example, see *Rayette-Faberge, Inc.*, 47 F.R.D. at 526 ("In my opinion, the attorney-client privilege does not apply to the correspondence in question for the reason that the communications are with a group of agents who, apparently, are not attorneys at law. Accordingly, the aforesaid documents should be produced . . . .").

before the United States Patent and Trademark Office. Certainly it cannot be disputed that a client of a patent agent will enjoy the benefit of the attorney-client privilege. Knowing that communications are protected from disclosure, the client will speak more freely and openly to the patent agent, and the patent agent will be able to provide more effective legal advice.

The practice of law began in the courts. It was logical and appropriate to make bar membership a prerequisite to assert the attorney-client privilege. The public should only be encouraged to contact legal advisors deemed qualified by the court in the jurisdiction where they hold themselves out to the public as being able to practice. Wigmore, *supra*, § 2300, at 580. In modern times, this premise should remain. Reason and experience, however, require that courts take a fresh look at whether bar membership should determine the outcome of an assertion of attorney-client privilege where the legal advisor is practicing before a federal agency.[3] *Id.* § 2300a, at 582. A label of lawyer or nonlawyer should not take on too much significance, the substance of the legal advisor's function and the prerequisites he overcame to perform that function should take on more significance. *Vernitron Med. Prods., Inc. v. Baxter Labs., Inc.*, 186 U.S.P.Q. 324, 325-26 (D.N.J. 1975). As long as the federal agency requires the legal advisor to possess specific qualifications, to take an oath of office, to conform his conduct with an ethical code, and to pass a test to practice law before it, then there is no logical and appropriate basis for drawing a distinction between a lawyer and nonlawyer in terms of applying the attorney-client privilege, especially where, as here, the federal agency itself draws no such distinction, thereby

---

[3] The law of privilege was not meant to remain frozen in time. *Trammel*, 445 U.S. at 47; Fed. R. Evid. 501.

making the label of lawyer or nonlawyer practically irrelevant anyway. Wigmore, *supra*, § 2300a, at 582.

We fully agree with the reasoning of the courts in *Dow Chemical Co. v. Atlantic Richfield Co.*, 227 U.S.P.Q. 129, 133-134 (E.D. Mich. 1985), *In re Ampicillin Antitrust Litigation*, 81 F.R.D. at 393-94, and *Vernitron Med. Products, Inc.*, 186 U.S.P.Q. at 325-26. All three courts reached the conclusion that we reach here: "Whenever applicable law limits the performance of essentially legal functions to individuals specifically authorized to that end, the underlying basis for the privilege . . . must be given its natural effect." *Vernitron Med. Prods., Inc.*, 186 U.S.P.Q. at 326. Accordingly, where legal advice is sought from a patent agent in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the patent agent, except the protection be waived. Wigmore, *supra*, § 2292, at 554.

### III. Conclusion

For the reasons stated, this Court finds that Mold-Masters has properly asserted the attorney-client privilege with respect to communications to and from McKenzie.

**ENTER ORDER:**

_____
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: October 19, 2001.

Copies have been mailed to:

DANIEL A. BOEHNEN, Esq.
CHRISTOPHER M. CAVAN, Esq.
JOSHUA R. RICH, Esq.
JAMES M. McCARTHY, Esq.
S. RICHARD CARDEN, Esq.
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

Attorneys for Plaintiff

CONSTANTINE L. TRELA, JR., Esq.
LISA A. SCHNEIDER, Esq.
Sidley Austin Brown & Wood
10 South Dearborn Street
Chicago, IL 60603

BRUCE C. HAAS, Esq.
MARC J. PENSABENE, Esq.
Fitzpatrick Cella Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112-3801

Attorneys for Defendant