# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | Martin C. Ashman |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1576 | **DATE** | 12/5/2001 |
| **CASE TITLE** | Mold-Masters Limited vs. Husky Injection Molding Systems, Lt | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion to compel production of documents and things identified in Husky's third amended privilege log [115-1] is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | 4 |
|---|---|---|---|
| | No notices required, advised in open court. | | number of notices |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | DEC 0 6 2001 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | | 12/5/2001 |
| ✓ | Copy to judge/magistrate judge. | | date mailed notice |

Document Number

162

courtroom deputy's initials

Date/time received in central Clerk's Office

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DOCKETED

DEC 0 6 2001

|  |  |  |
|---|---|---|
| MOLD-MASTERS LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 1576 |
| | ) | |
| | ) | Judge Suzanne B. Conlon |
| v. | ) | |
| | ) | Magistrate Judge |
| HUSKY INJECTION MOLDING | ) | Martin C. Ashman |
| SYSTEMS LTD., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Mold-Masters Limited filed suit against Husky Injection Molding Systems Ltd. for infringement of patent number 5,299,928 (the "928 patent"). Presently before this Court is Mold-Masters's Motion to Compel Production of Documents and Things Identified in Husky's Third Amended Privilege Log. For the following reasons, this Court grants Mold-Masters's motion in part and denies it in part.

## I.

This infringement suit involving the 928 patent commenced on March 6, 2001, after Husky refused to discontinue producing and selling a certain injection molding nozzle, the purported infringing product, as per a demand by Mold-Masters, which was made in a February 23, 2001 letter. By way of history, Husky was aware of Mold-Masters's 928 patent before the February 23 letter was sent. Husky had unsuccessfully opposed Mold-Masters's European counterpart to the 928 patent in or around January 2001.



The point of contention between the parties that we confront now concerns two binders of documents that Husky has withheld from discovery pursuant to the attorney-client privilege and work-product doctrine. Based on Husky's description of these documents on its Third Amended Privilege Document Log,[1] Mold-Masters claims that Husky's assertion of the attorney-client privilege and work-product doctrine is improper. Based also on Husky's description of these documents on its Third Amended Privilege Document Log, Mold-Masters claims that the documents must be disclosed pursuant to this Court's September 7, 2001 order. The September 7 order related to legal opinions Husky had requested or received regarding any issue of validity, infringement, enforceability, or liability with respect to the 928 patent, or which discussed the scope of coverage or meaning of the claims of the 928 patent. The September order stated that if Husky chose to rely on any such opinion for any purpose at any time in the litigation, Husky would have to produce to Mold-Masters "all documents or portions of documents that relate to the subject matter of the opinion." (Order 9/7/01 at 2.) After entry of the order, Husky did, in fact, elect to rely on a legal opinion regarding the validity of the 928 patent.

At the suggestion of the parties, we have agreed to conduct an in camera review of the documents in dispute. The pertinent issues have been fully briefed.

## II.

We begin our analysis with a brief discussion of the attorney-client privilege, the work-product doctrine, the privilege log requirement contained in Federal Rule of Civil

---

[1] Husky has amended its privilege log three times in part because of its failure to sufficiently describe documents listed on the log.

Procedure 26(b)(5), and this Court's September 7 order. Then we apply these principles and rules to the appropriate documents to resolve the instant dispute.

The attorney-client privilege protects confidential communications between a client and his legal advisor. It developed as a consideration for the fostering of confidence and trust by the client in his legal advisor so that the legal advisor could provide effective legal advice. *Trammel v. United States*, 445 U.S. 40, 51 (1980); *Prevue Pet Prods., Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D. Ill. 2001) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The general principle of the attorney-client privilege takes the following form: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991) (quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev. 1961)). Because the attorney-client privilege is in derogation of the judicial search for truth, it is strictly construed. *In re Walsh*, 623 F.2d 489, 493 (7th Cir. 1980). The party asserting the attorney-client privilege bears the burden of establishing all of its elements on a document-by-document basis. *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

The work-product doctrine not only protects communications between a client and his legal advisor, but also much that has its source outside of client communications. It developed as a consideration for the maintenance of a "certain degree of privacy" to protect the legal advisor's work so as to promote balance and fairness in the adversarial system. *Upjohn Co.*, 449 U.S. at 397-402; *Hickman v. Taylor*, 329 U.S. 495, 507-12 (1947). In codified form, the work-product

doctrine states that "a party may obtain discovery of documents . . . otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). The party asserting the work-product doctrine must establish all of its elements on a document-by-document basis. *Applied Telematics, Inc. v. Sprint Communications Co.*, Civ. A. No. 94-4603, 1996 WL 539595, at *4 (E.D. Pa. Sept. 18, 1996). The threshold determination in any case is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Binks Mfg. v. National Presto Indus.*, 709 F.2d 1109, 1118-19 (7th Cir. 1983) (quoting 8 Charles Alan Wright et al., Federal Practice and Procedure § 2024, at 343 (2d ed. 1994)).

As to any information withheld pursuant to the attorney-client privilege or work-product doctrine, Rule 26(b)(5) requires that the withholding party make the claim of privilege or protection expressly "and describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). For each document, this description should include the date of the document, all authors and recipients of the document along with their capacities, a statement of the subject matter of the document, and an explanation of the basis for withholding the document from discovery. *SmithKline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 533-34 (N.D. Ill.

2000); *Weeks v. Samsung Heavy Indus.*, No. 93 C 4899, 1996 WL 341537, at *2 (N.D. Ill. June 20, 1996); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992). If the description falls below this standard and fails to provide sufficient information for the court and the party seeking disclosure to assess the applicability of the attorney-client privilege or work-product doctrine, then disclosure of the document is an appropriate sanction. *SmithKline Beecham Corp.*, 193 F.R.D. at 534; *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 257-58 (N.D. Ill. 1999); *Conagra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1017-18 (N.D. Ill. 1999); *Stern Walters Partners, Inc. v. Kaminky*, No. 94 C 5705, 1996 WL 115290, at *5-6 (N.D. Ill. Mar. 13, 1996).

It should hardly come as a surprise that an attachment to a document must appear as a separate entry on the privilege log. *See O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999); *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990); *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980). Courts provide protection against disclosure pursuant to the attorney-client privilege and work-product doctrine on a document-by-document basis. Since a document with an attachment constitutes two separate documents, a party objecting to the disclosure of a document with an attachment must prove that both the document and the attachment individually satisfy the requirements of the applicable privilege or doctrine. *Lawless*, 709 F.2d at 487; *Applied Telematics, Inc.*, 1996 WL 539595, at *4. Merely attaching a document to a privileged or protected document does not make the attached document privileged or protected. *O'Connor*, 185 F.R.D. at 280; *Leonen*, 135 F.R.D. at 98; *Sneider*, 91 F.R.D. at 4.

Lastly, we mention this Court's September 7 order. Because Husky has relied on a legal opinion regarding the validity of the 928 patent, the September order requires Husky to produce to Mold-Masters "all documents or portions of documents that relate to the subject matter of the opinion." (Order 9/7/01 at 2.) Thus, any document or portion of any document in Husky's possession that concerns, pertains to, or refers to the validity of the 928 patent must be disclosed, regardless of whether that document would otherwise be privileged or protected.

* * *

Against this backdrop, we turn to the documents submitted for in camera review.[2] Each document is analyzed separately by the document number provided by Husky. Because Husky's objections to disclosure are based on the content of each document, we rely heavily on Husky's Third Amended Privilege Document Log to assess Husky's assertion of the attorney-client privilege and work-product doctrine. In this regard, Husky's descriptions of the documents are quite unhelpful. The descriptions are general and conclusory, making it extremely difficult to assess the applicability of Husky's assertions of the attorney-client privilege and work-product doctrine.[3] Nevertheless, to the extent this Court can discern from the content of the documents

---

[2] As an initial matter, Husky has not submitted documents P48, P52, P79, P86, P92, P118, P123, P124, P126, P128, P135, P153, P165, P166, P167, and P169 to this Court for in camera review despite the fact that Mold-Masters raised objections to Husky's withholding of these documents from discovery. We find that all of the documents must be disclosed, assuming that the documents have not already been disclosed. Also, we note that Husky included a document titled *Husky's In Camera Explanation for Withholding Documents as Privileged* within each binder of documents submitted for in camera review. These ex parte communications have not been considered by this Court.

[3] For example, most document descriptions contain slight variations of the following phrase: "confidential communication made for the purpose of providing legal advice in anticipation of litigation, not regarding the 928 patent." (Def.'s Third Am. Privilege Doc. Log at (continued...)

and Husky's description of the documents that the attorney-client privilege or work-product doctrine applies, such documents may be withheld. Yet documents that are not described at all on Husky's privilege log must be disclosed. This Court has provided Husky with multiple opportunities and sufficient time to comply with Rule 26(b)(5). At this stage of the game, immediate production of any document not described at all on Husky's privilege log is the necessary sanction.

## P3

Husky described document P3 as a letter with attachment dated February 21, 2001, from Robert Bachman, Husky's lawyer, to Robin Arnott, a Husky employee. A handwritten note has been redacted from the letter. The handwritten note must be disclosed because Husky failed to provide any information describing the handwritten note on its privilege log.

## P21

Husky described document P21 as an e-mail dated August 23, 2000, from Arnott to Eric Spencer and Mike Gould, Husky employees. The content of the e-mail preceding the sentence beginning with "The reason" does not reveal a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the remainder of the e-mail contains information

---

[3](...continued)
1-19.) Husky's privilege log does not describe the subject matter of the documents, which, especially in the case of untitled drawings, often leaves this Court guessing as to what the documents pertain.

protected under the attorney-client privilege. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.


## P26

Husky described document P26 as an e-mail dated May 18, 2000, from Arnott to Spencer. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.


## P27

Husky described document P27 as an e-mail with handwritten notes dated May 18, 2000, from Spencer to Arnott. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. Also, Husky failed to provide any information about the handwritten notes on its privilege log. For that reason, the attached messages and handwritten notes must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information

contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

## P38

Husky described document P38 as a May 15, 2000 report authored by Arnott. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains information protected under the attorney-client privilege or work-product doctrine. The report is a compilation of public information; its purpose is unknown. Therefore, the report must be disclosed.

## P50

Husky described document P50 as a November 25, 1999 report authored by Arnott. The report is an earlier draft of P38. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains information protected under the attorney-client privilege or work-product doctrine. The report is a compilation of public information; its purpose is unknown. Therefore, the report must be disclosed.

## P64

Husky described document P64 as an e-mail dated March 19, 1999, from Ed Jenko, a Husky employee, to Arnott, Charlie Hillman, David Whiffen, Martin Baumann, and David Meyer, all Husky employees. Included with the e-mail is an attached message and a handwritten note that are not described at all on Husky's privilege log. For that reason, the attached message

and handwritten note must be disclosed. The content of the e-mail itself does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail in the paragraph beginning with "Robin" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. This Court cannot tell whether the rest of the e-mail is protected under the work-product doctrine; therefore, the information must be disclosed.

**P65**

Husky described document P65 as an e-mail dated March 18, 1999, from Jenko to Arnott. The content of the e-mail does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in anticipation of litigation, but the information contained in the e-mail must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

**P72**

Husky described document P72 as a letter dated November 20, 1998, from Robert Stratton, Husky's lawyer, to Arnott, and Rick Bauer, Husky's lawyer. The content of the letter does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the information contained in the e-mail was

prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

## P75

Husky described document P75 as an e-mail dated March 11, 1999, from Arnott to Jenko. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself reveals that the information contained up to the sentence beginning with "To file" is not protected against disclosure under the attorney-client privilege. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the rest of the e-mail contains information protected under the attorney-client privilege. The e-mail does contain information prepared in anticipation of litigation in the paragraphs up to and including the paragraph beginning with "In the meantime" as well as the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation.

## P78

Husky described document P78 as an undated e-mail from Arnott to Jenko and Stefan Von Buren, a Husky employee. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be

disclosed. All of the information contained in the e-mail itself has already been disclosed so no additional rulings are necessary.

## P81

Husky described document P81 as an e-mail dated January 19, 1999, from Arnott to Abdeslam Bouti, George Olaru, Von Buren, and Jenko, all Husky employees. The redacted information contained in the paragraphs beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.

## P85

Husky described document P85 as a letter dated March 6, 2001, from Daniel Boehnen, Mold-Masters's lawyer, to Robert Schad, a Husky employee. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

## P87

Husky described document P87 as a letter dated February 28, 2001, from Jonathan Fischer, a Mold-Masters employee, to Schad. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

## P89

Husky described document P89 as a letter dated February 23, 2001, from Alan Cantor, Mold-Masters's lawyer, to Schad and Fischer. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

## P91

Husky described document P91 as an e-mail dated March 3, 2001, from T.J. Dhillon, a Husky employee, to Arnott and thirteen other Husky employees. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether any part of the e-mail contains information protected under the attorney-client privilege. The content of the e-mail reveals that the information contained in the e-mail was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail merely conveys business information to sales associates. Therefore, the e-mail must be disclosed.

## P93

Husky described document P93 as an undated report authored by Bruce Haas, Husky's lawyer. This Court cannot tell from the content of the report or from Husky's description of the report whether the report contains redacted information that is protected under the attorney-client privilege. The content of the report reveals that the redacted information contained in the report was prepared in anticipation of litigation, but the redacted information contained in bullet points two and three on page six of the report must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The rest of the redacted information contained in the report is protected against disclosure under the work-product doctrine because the information was prepared in anticipation of litigation; the information does not relate to the validity of the 928 patent.

## P94

Husky described document P94 as a letter dated February 28, 2001, from Fischer to Schad. Some handwritten notes have been redacted from the letter. No information relating to the handwritten notes is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed.

## P97

Husky described document P97 as undated handwritten notes authored by Derek Smith, a Husky employee. This Court cannot tell from the content of the notes or from Husky's

description of the notes whether the notes contain information protected under the attorney-client privilege or work-product doctrine. Consequently, the handwritten notes must be disclosed.


## P103

Husky described document P103 as an e-mail dated January 14, 1999, from Sandra Hackenberg, a Husky employee, to Arnott and sixteen other Husky employees. Included with the e-mail is an attached document that is not described at all on Husky's privilege log. For that reason, the attached document must be disclosed. The e-mail itself has already been disclosed so no additional rulings are necessary.


## P104

Husky described document P104 as an e-mail dated January 19, 1999, from Arnott to Jenko, Von Buren, and Olaru. This document is identical to P81. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The attached message was disclosed in P81 anyway.

The redacted information contained in the paragraphs of the e-mail beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the

work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.

The second page of P104 is a copy of the first page of P104. The same analysis applies.


## P105

Husky described document P105 as an e-mail with attachment dated March 11, 1999, from Jenko to Arnott. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. (One of the attached messages is dated November 27, 1998, also known as P107.) Also, no information relating to the attachment is included on Husky's privilege log. Therefore, the attached messages and document must be disclosed.

This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the attorney-client privilege. The e-mail does contain information prepared in anticipation of litigation in the paragraph beginning with "In the meantime" and in the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the redacted information contained in the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation. If this ruling looks similar to P75, that is because P105 is identical to P75, except for the fact that parts redacted from P75 were voluntarily disclosed by Husky in P105. Why Husky imposed on this Court in this fashion is unexplained.

## P106

Husky described document P106 as an e-mail dated December 8, 1999, from Arnott to Jenko. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. All of the information contained in the e-mail itself has already been disclosed so no additional rulings are necessary.

## P107

Husky described document P107 as an e-mail with attachment dated November 27, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the attorney-client privilege. The content of the e-mail reveals that the redacted information was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

## P108

Husky described document P108 as an e-mail dated November 11, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information in the paragraphs beginning with "We also" and "In summary" is protected under the attorney-client privilege. The content of the redacted paragraph beginning with "Meanwhile" relays legal advice, but the information contained in the paragraph must be disclosed pursuant to the September 7 order because the

information relates to the validity of the 928 patent. The content of the redacted paragraph beginning with "If we" relays legal advice that does not pertain to the validity of the 928 patent, and therefore the information need not be disclosed. The content of the redacted paragraphs beginning with "We also" and "In summary", except for the final sentence beginning with "Can", reveals that the information contained in those paragraphs was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The sentence beginning with "Can" is not protected under the work-product doctrine because the information contained in that sentence was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the manufacture of a potential product.

### P109

Husky described document P109 as an e-mail dated October 1, 1998, from Arnott to Whiffen, Olaru, Jenko, and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the redacted information contained in the sentence beginning with "What" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the redacted information contained in the sentence beginning with "Please" reveals that the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

**P110**

Husky described document P110 as an e-mail with attachment dated October 1, 1998, from Hackenberg to Arnott and eleven other Husky employees. No information relating to the attachment is included on Husky's privilege log. For that reason, the attachment must be disclosed. The e-mail itself contains no privileged or protected information.

**P111**

Husky described document P111 as an undated facsimile from Arnott to Whiffen. No information relating to the faxed documents is included on Husky's privilege log. For that reason, the faxed documents must be disclosed.

**P112**

Husky described document P112 as a letter dated July 8, 1997, from Olaru to Whiffen, Bouti, and Peter Hall, all Husky employees. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted portion of the letter is protected under the attorney-client privilege or work-product doctrine. Therefore, the letter must be disclosed.

**P114**

Husky described document P114 as an e-mail dated March 11, 1999, from Arnott to Jenko. Included with the e-mail are attached messages and documents. Neither the attached messages nor the attached documents are described at all on Husky's privilege log. For that

reason, the attached messages and documents must be disclosed. The content of the e-mail itself reveals that the information contained up to the sentence beginning with "To file" is not protected against disclosure under the attorney-client privilege. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the rest of the e-mail contains information protected under the attorney-client privilege. The e-mail does contain information that was prepared in anticipation of litigation in the paragraphs up to and including the paragraph beginning with "In the meantime" as well as the sentence beginning with "Finally", but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The remainder of the e-mail is not protected under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation. Incidentally, P114 is identical to P75.

**P115**

Husky described document P115 as an April 28, 1997 report authored by Bouti. The content of the report reveals that the information contained in the report is not protected under the attorney-client privilege or work-product doctrine; the report merely contains information relating to the design of a potential product. Therefore, the report must be disclosed.

**P116**

Husky described document P116 as an e-mail dated August 6, 1997, from Olaru to Martin Osterode and four other Husky employees. The content of the e-mail reveals that the redacted information contained in the e-mail is not protected under the attorney-client privilege or

work-product doctrine; the information deals with a possible business arrangement between Kona and Husky. Therefore, the e-mail must be disclosed.

## P119

Husky described document P119 as a letter with attachment dated July 8, 1997, from Olaru to Whiffen, Bouti, and Hall. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted portion of the letter contains information protected under the attorney-client privilege or work-product doctrine. P119 is identical to P112.

## P121

Husky described document P121 as a March 21, 1997 report with attachment authored by Bouti. Included with the report are two attached documents that are not described at all on Husky's privilege log. For that reason, the attached documents must be disclosed. The content of the report itself reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the report contains business information regarding the design of a potential product. Therefore, the report must be disclosed.

## P125

Husky described document P125 as a letter dated February 24, 1997, from Olaru to Whiffen and Rajan Puri, a Husky employee. The redacted information contained in the

paragraph beginning with "The preliminary" relays legal advice unrelated to the validity of the 928 patent so the information need not be disclosed. This Court cannot tell from the content of the letter or from Husky's description of the letter whether the redacted information contained in the remaining paragraphs is protected under the attorney-client privilege. The content of the letter reveals that the redacted information contained in the remaining paragraphs was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product.


## P129

Husky described document P129 as a facsimile with attachment dated October 16, 1998, from Arnott to Whiffen. The attachments are not described at all on Husky's privilege log. For that reason, the attachments must be disclosed. The facsimile cover sheet has already been disclosed so no additional rulings are necessary.


## P130

Husky described document P130 as a May 12, 1997 report authored by Harold Godwin, a Husky employee. The content of the report reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the information pertains to the design of a potential product. Therefore, the report must be disclosed.

**P133**

Husky described document P133 as a facsimile dated November 22, 1999, from Arnott to Bachman. The content of the facsimile reveals that the redacted information contains a confidential communication that was made for the purpose of obtaining legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

**P136**

Husky described document P136 as an e-mail dated November 16, 1999, from Arnott to Ralph Gauss and five other Husky employees. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself does not reveal any confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

**P140**

Husky described document P140 as an undated e-mail from Arnott to Gauss and three other Husky employees. Included with the e-mail are attached messages that are not described at all on Husky's privilege log. For that reason, the attached messages must be disclosed. The content of the e-mail itself does not reveal any confidential communication that was made for the

purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

## P142

Husky described document P142 as a letter dated October 22, 1999, from Bachman to Arnott. Included with the letter are attachments that are not described at all on Husky's privilege log. For that reason, the attachments must be disclosed. The content of the letter is not protected against disclosure under the attorney-client privilege because the information contained in the letter does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the letter is protected against disclosure under the work-product doctrine because the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent.

## P144

Husky described document P144 as a letter dated October 18, 1999, from Arnott to Gauss and two other Husky employees. Included with the letter are attachments that are not described at all on Husky's privilege log. For that reason, the attachments must be disclosed. The redacted information contained in the paragraphs beginning with "I have" and "If you" is not protected under the attorney-client privilege because the information does not reveal a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell

from the content of the letter or from Husky's description of the letter whether the redacted information contained in the paragraph beginning with "Our strategy" is protected under the attorney-client privilege. The content of the letter reveals that the redacted information contained in the paragraph beginning with "Our strategy" was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the letter also reveals that the redacted information contained in the paragraphs beginning with "I have" and "If you plan" was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design and sale of a potential product.

## P146

Husky described document P146 as an e-mail dated January 19, 1999, from Arnott to Bouti, Von Buren, Jenko, and Olaru. The redacted information contained in the paragraphs beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Incidentally, P146 is identical to P81.

## P147

Husky described document P147 as an e-mail dated January 18, 1999, from Bouti to Arnott, Jenko, Von Buren, and Alex Teng, all Husky employees. The content of the redacted portion of the e-mail does not contain a confidential communication that was made for the purpose of obtaining legal advice. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted information contained in the e-mail is protected under the work-product doctrine. Therefore, the e-mail must be disclosed.

## P148

Husky described document P148 as an e-mail dated November 11, 1998, from Jenko to Arnott. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The content of the e-mail does not contain a confidential communication that was made for the purpose of obtaining legal advice. The content of the e-mail reveals that the e-mail was prepared in the ordinary course of business and not in anticipation of litigation; the e-mail pertains to the design of a potential product. Therefore, the e-mail must be disclosed.

## P152

Husky described document P152 as an e-mail dated May 22, 1997, from Whiffen to Bouti and Olaru. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The information contained in the e-mail has already been disclosed so no additional rulings are necessary.

**P154**

Husky described document P154 as an e-mail with attachment dated October 1, 1998, from Arnott to Whiffen, Olaru, Jenko, and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the redacted information contained in the sentence beginning with "What" reveals that the information was prepared in anticipation of litigation, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The content of the redacted information contained in the sentence beginning with "Please" reveals that the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. If this ruling sounds similar to P109, that is because P154 is identical to P109.

**P156**

Husky described document P156 as an e-mail dated January 19, 1999, from Arnott to Jenko, Von Buren, Bouti, and Olaru. Included with the e-mail is an attached message that is not described at all on Husky's privilege log. For that reason, the attached message must be disclosed. The redacted information contained in the paragraphs of the e-mail beginning with "The situation" and "If Mold-Masters" relays legal advice, but the information must be disclosed pursuant to the September 7 order because the information relates to the validity of the 928 patent. The redacted information contained in the paragraph beginning with "Based" is not protected under the attorney-client privilege because of waiver; the information relays legal

advice contained in the e-mail that has already been disclosed. The redacted information contained in the paragraph beginning with "Based" is not protected against disclosure under the work-product doctrine because the information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Incidentally, P156 is identical to P81.

## P157

Husky described document P157 as an e-mail with attachment dated November 27, 1998, from Arnott to Jenko and Von Buren. This Court cannot tell from the content of the e-mail or from Husky's description of the e-mail whether the redacted portion of the e-mail is protected under the attorney-client privilege. The content of the e-mail reveals that the redacted information was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. P157 is identical to P107.

## P159

Husky described document P159 as a February 11, 1997 report authored by Olaru. This Court cannot tell from the content of the report or from Husky's description of the report whether the report is protected under the attorney-client privilege or work-product doctrine. Therefore, the report must be disclosed.

## P161

Husky described document P161 as a January 7, 1999 report authored by Olaru. The report contains handwritten notes that are not described at all on Husky's privilege log. For that reason, the handwritten notes must be disclosed. The content of the report itself reveals that the information contained in the report is not protected against disclosure under the attorney-client privilege or work-product doctrine; the report merely provides an update on issues relating to Husky's products or potential products. Therefore, the report must be disclosed.

**P170**

Husky described document P170 as a facsimile from Arnott to Whiffen. Included with the facsimile cover sheet are attached documents that are not described at all on Husky's privilege log. For that reason, the attached documents must be disclosed. The information contained in the facsimile has already been disclosed so no additional rulings are necessary.

**P216**

Husky described document P216 as a design drawing and patent with handwritten notes dated July 16, 1996, from the file of Jenko. No information pertaining to the handwritten notes (e.g., who wrote the notes) is included on Husky's privilege log. For that reason, the handwritten notes must be disclosed. This Court cannot tell from the content of the drawing or patent or from Husky's description of the drawing or patent whether any part of the drawing or patent is protected under the attorney-client privilege or work-product doctrine. Therefore, the drawing and patent must be disclosed.

**P218**

     Husky described document P218 as a February 28, 2001 report with handwritten notes authored by Baumann. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.


**P219**

     Husky described document P219 as a February 28, 2001 report authored by Baumann. This Court cannot tell from the content of the report or from Husky's description of the report whether any part of the report is protected under the attorney-client privilege or work-product doctrine. Therefore, the report must be disclosed.


**P220**

     Husky described document P220 as undated drawings with handwritten notes from the file of Arnott. This Court cannot tell from the content of the drawings or handwritten notes or from Husky's description of the drawings or handwritten notes whether any part of the drawings or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the drawings and handwritten notes must be disclosed.

## P223

Husky described document P223 as an undated report authored by Arnott. The report consists solely of approximately twenty-seven separate documents that are not described at all on Husky's privilege log. For that reason, the entire document must be disclosed.

## P224

Husky described document P224 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

## P225

Husky described document P225 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

## P226

Husky described document P226 as a June 3, 1997 report with handwritten notes from the file of Olaru. This Court cannot tell from the content of the report or handwritten notes or from

Husky's description of the report or handwritten notes whether any part of the report or handwritten notes is protected under the attorney-client privilege or work-product doctrine. Therefore, the report and handwritten notes must be disclosed.

## P228

Husky described document P228 as undated handwritten notes from the file of Arnott. This Court cannot tell from the content of the handwritten notes or from Husky's description of the handwritten notes whether any part of the notes is protected under the attorney-client privilege. The content of the handwritten notes reveals that the information contained in the notes was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

## P229

Husky described document P229 as handwritten notes dated February 28, 2001, from the file of Arnott. This Court cannot tell from the content of the handwritten notes or from Husky's description of the handwritten notes whether any part of the notes is protected under the attorney-client privilege. The content of the handwritten notes reveals that the information contained in the notes was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

**P230**

Husky described document P230 as a March 5, 2001 document authored by Arnott. This Court cannot tell from the content of the document or from Husky's description of the document whether any part of the document is protected under the attorney-client privilege. The content of the document reveals that the information contained in the document was prepared in anticipation of litigation; the information relates to the instant suit, but not to the validity of the 928 patent.

**P234**

Husky described document P234 as handwritten notes dated May 17, 1997, authored by Godwin and Bouti. The content of the notes does not reveal a confidential communication that was made for the purpose of obtaining legal advice. The content of the notes also reveals that the information contained in the notes was prepared in the ordinary course of business and not in anticipation of litigation; the information pertains to the design of a potential product. Therefore, the notes must be disclosed.

**P236**

Husky described document P236 as an undated draft application from the file of Bouti. This Court cannot tell from the content of the application or from Husky's description of the application whether any part of the application is protected under the attorney-client privilege. Therefore, the draft application must be disclosed.

## IV.

For the reasons stated, this Court grants Mold-Masters's motion in part and denies it in

part. Husky must produce documents to Mold-Masters as stated above.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** December 5, 2001.

Copies have been mailed to:

DANIEL A. BOEHNEN, Esq.
CHRISTOPHER M. CAVAN, Esq.
JOSHUA R. RICH, Esq.
PAUL S. TULLY, Esq.
McDonnell Boehnen Hulbert & Berghoff
300 South Wacker Drive
Suite 3200
Chicago, IL 60606

CONSTANTINE L. TRELA, JR., Esq.
LISA A. SCHNEIDER, Esq.
Sidley Austin Brown & Wood
10 South Dearborn Street
Chicago, IL 60603

BRUCE C. HAAS, Esq.
MARC J. PENSABENE, Esq.
Fitzpatrick Cella Harper & Scinto
30 Rockefeller Plaza
New York, NY 10112-3801

Attorneys for Plaintiff

Attorneys for Defendant